5 Ill.2d 519 (1955)
126 N.E.2d 235
ROGER FAHERTY, Appellant,
v.
THE BOARD OF ELECTION COMMISSIONERS OF THE CITY OF CHICAGO et al., Appellees.
No. 33543.
Supreme Court of Illinois.
Opinion filed March 24, 1955.
Announced February 7, 1955.
Rehearing denied May 16, 1955.
ROY S. LASSWELL, of Chicago, for appellant.
THEODORE J. ISAACS, and URBAN A. LAVERY, both of Chicago, for appellees.
Judgment reversed.
Mr. JUSTICE SCHAEFER delivered the opinion of the court.
On January 11, 1955, Roger Flaherty filed a complaint in the circuit court of Cook County against the Board of Election Commissioners of the city of Chicago and its members. He alleged that he and others similarly situated were members of the Republican Party who had voted in the State and county Republican primary election in April of 1954, that they desired to vote in the Democratic Party primary election to be held on February 22, 1955, for the nomination of candidates for mayor, city clerk and city *520 treasurer of the city of Chicago, and that thereafter they desired to vote in the Republican Party primary to be held in April, 1956, for the nomination of candidates for State and county offices. He also alleged that the defendants had prepared instructions for the conduct of the February, 1955, primary election which stated: "Persons who voted a ballot of a political party at the primary election of April 13, 1954, cannot change and vote the ballot of another political party at this primary election." The complaint alleged that this interpretation of the governing statutes by the defendants was erroneous, and prayed for a judgment declaring that the statutes do not prohibit electors from changing party affiliations at the February, 1955, and April, 1956, primary elections in the manner described in the complaint.
Defendants' answer alleged that the Republican and Democratic parties which had nominated candidates for municipal, county, congressional and State offices at the April, 1954, primary election had each cast more than five per cent of the total vote cast for candidates at the November, 1954, election; that each of these parties was a party within and recognized throughout the State and was each one and the same political party in municipal, county, congressional and State elections. The answer alleged that the rules issued by the defendants were required by the applicable statutes, and denied the existence of a justiciable controversy.
The trial court entered a declaratory judgment holding that the plaintiff and others similarly situated were not prohibited from changing party affiliations for voting in the February, 1955, municipal primary election. But the trial court refused to pass on the right of the plaintiff and others thereafter to change affiliations again for voting in the April, 1956, State and county primary election, on the ground that no justiciable controversy yet existed with respect to that issue. Plaintiff appealed from the judgment *521 insofar as it refused declaratory relief and defendants cross-appealed from the judgment insofar as it granted the declaratory relief sought by the plaintiff.
Upon the authority of Progressive Party v. Flynn, 400 Ill. 102, we determined that a franchise was involved and advanced the case for argument on February 7, 1955. At the conclusion of the argument, judgment was entered reversing the judgment of the circuit court. This opinion states the considerations upon which that judgment was based.
Article 7 of the Election Code (Ill. Rev. Stat. 1953, chap. 46, pars. 7-1 to 7-65,) deals with the organization of political parties and the nomination of their candidates for public office. It requires that the candidates of a political party for State, congressional, county and municipal offices be selected at primary elections, and it provides who shall be eligible to vote at primary elections. The provision which bears directly upon the present issue is section 7-43(d), which provides: "No person shall be entitled to vote at a primary: * * * (d) If he shall have voted after January 1, 1939 at a primary held under this Article 7 of another political party within a period of twenty-three calendar months next preceding the calendar month in which such primary is held: Provided, participation by a primary elector in a primary of a political party which, under the provisions of Section 7-2 of this Article, is a political party within a city, village or incorporated town or town only and entitled hereunder to make nominations of candidates for city, village or incorporated town or town offices only, and for no other office or offices, shall not disqualify such primary elector from participating in other primaries of his party: And, provided, that no qualified voter shall be precluded from participating in the primary of any purely city, village or incorporated town or town political party under the provisions of Section 7-2 of this Article by reason of such voter having voted after *522 January 1, 1939, at the primary of another political party within a period of twenty-three calendar months next preceding the calendar month in which he seeks to participate is held."
The plaintiff contends that this language indicates an intent to establish "open primaries" in city elections. He argues that the second proviso "appears to emphatically exempt a party switch for a purely City election the same as the first * * * allows a party switch from a purely City election to a State and county-wide primary." This construction, however, reads into the statute a reference to "a purely city election" which is not there. What the statute speaks of is "any purely city * * * political party," and of "a political party within a city * * * only and entitled hereunder to make nominations * * * for city * * * offices only." We think that the language of section 7-43(d) refers to a particular kind of political party and not to a particular kind of election. Its relationship to other provisions of the Election Code and its legislative history make its meaning unmistakable.
Section 7-45 of the Election Code prescribes the form of affidavit to be executed by a voter whose right to vote at a primary election is challenged. The affidavit requires the voter to state, "* * * that I have not voted at a primary of another political party after January 1, 1939 within a period of twenty-three calendar months prior to the calendar month in which this primary is being held; and that I voted at the ____ city, village, incorporated town, or town primary, with the ____ political party at the ____ election held in ____ A.D. ____ which said ____ political party was entitled at such primary to make nominations of candidates for city, village, incorporated town or town offices only, and for no other offices, and that the name or names of no candidate or candidates of the ____ political party (the political party with which the primary elector declares himself affiliated) *523 were, at such city, village, incorporated town or town primary, printed on the primary ballot; * * *." (Ill. Rev. Stat. 1953, chap. 46, par. 7-45.) This language does not suggest a legislative purpose to establish an open primary for city elections. The references in sections 7-43 and 7-45 to "a political party * * * entitled to make nominations of candidates for city, village or incorporated town or town offices only, and for no other office or offices," are to those familiar local parties known as the "Economy Party," the "Village Party," the "People's Party," and the like, which are employed in many municipalities to avoid injecting major party politics into local affairs. The purpose of the statutory provisions is to ensure that by voting in the primary of such a local party, the voter does not lose his right to participate in the primary of a major political party.
Section 7-2 of the Election Code provides for political parties within various governmental or political units. It states the public offices for which each type of political party may make nominations and the party offices which each type of party may fill by election. It provides:
"A political party, which at the general election for State and county officers then next preceding a primary, polled more than 5 per cent of the entire vote cast in the State, is hereby declared to be a political party within the State, and shall nominate all candidates provided for in this Article 7 under the provisions hereof, and shall elect precinct, township, ward and State central committeemen as herein provided. * * * A political party, which at the general election for State and county officers then next preceding a primary, cast more than 5 per cent of the entire vote cast in any county, is hereby declared to be a political party within the meaning of this Article, within said county, and shall nominate all county officers in said county under the provisions hereof, and shall elect precinct, township, and ward committeemen, as herein provided;
*524 "A political party, which at the municipal election for city, village or incorporated town officers then next preceding a primary, cast more than 5 per cent of the entire vote cast in any city or village, or incorporated town is hereby declared to be a political party within the meaning of this Article, within said city, village or incorporated town, and shall nominate all city, village or incorporated town officers in said city or village or incorporated town under the provisions hereof to the extent and in the cases provided in section 7-1. * * *"
Under these provisions neither the Republican nor the Democratic party is a political party "within a city * * * only and entitled hereunder to make nominations of candidates for city * * * offices only, and for no other office or offices." Neither party is a "purely city * * * political party." Each is entitled to make nominations for congressional, State and county offices. Both may be city political parties in those cities which conduct their elections on a major party basis, but both are also State-wide political parties and both are county-wide political parties. A State-wide or county-wide political party elects ward, township or precinct committeemen. A political party within a city does not. The municipal central committees of the Republican and Democratic parties, which are empowered to select candidates to fill vacancies caused by the death or declination of nominees, are made up of those persons who have been selected as ward committeemen of the State- and county-wide Republican and Democratic parties. These same ward committeemen are also members of the county central committee of their party, and they select the delegates to their party's State convention. (Ill. Rev. Stat. 1953, chap. 46, pars. 7-8, 7-9.) The effect of these provisions is that the Republican and Democratic parties within the city of Chicago are units of State and county political parties and are not "purely" city parties entitled to nominate candidates to fill city offices "only."
*525 Plaintiff argues that an amendment to the forerunner of section 7-43, adopted in 1939, "conclusively established intent for open primaries in City of Chicago elections. * * * The question of interpreting Section 43 of the 1910 Act as to switching in and out of city party primary affiliations was settled by the Legislature once and for all as to switching into City primary within the 23 month limitation period when it said in Section 2 of the 1939 Act (Laws of 1939, p. 533): `Sec. 2. Many electors voted at the primary election held in April, 1938 and at that primary election changed their party affiliation under the impression that the party affiliation expressed at such primary election would not control the party with which they could affiliate at the municipal primary to be held on February 28, 1939 and
"It is the legislative judgment that such electors should be permitted to resume their party affiliation as it was prior to April, 1938 and
"To make this action possible it is necessary that this amendatory Act be in force and effect prior to July 1, 1939.'"
The 1939 amendment is indeed relevant to the construction of section 7-43. Section 43 of the Primary Act of 1910, which was then in effect, was substantially identical with the present section 7-43. The emergency clause of the 1939 amendment, quoted above, shows that persons who had voted in the State and county primary of one party in April of 1938 desired to vote in the primary of the other party in the city primary in February of 1939. To make this possible it was necessary that section 43 be amended, and that the amendment become effective, as an emergency bill, prior to the date of the city primary. The precise nature of the amendment is thus highly significant. What the General Assembly did was to insert the phrase "after January 1, 1939" which now appears in section 7-43, so that the operation of the entire section was postponed *526 and made inapplicable to the February, 1939, municipal primary. This ad hoc change in the language of the section does not indicate a purpose to establish open primaries in municipal elections. Rather it makes conclusive the construction which flows naturally from the language of section 7-43 and related provisions of the Election Code. For it establishes that except as its operation was temporarily postponed by the 1939 amendment, the section is intended to prevent those who voted in the primary of one political party at a State-wide primary election from voting in the primary of the other political party at a municipal primary election which occurs within twenty-three months.
For these reasons we concluded that the circuit court had erred, and reversed the declaratory judgment which it had entered. That conclusion made it unnecessary to consider plaintiff's contention that the circuit court had erred in refusing to grant further declaratory relief.
The judgment of the circuit court of Cook County has been reversed.
Judgment reversed.