[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
FACTS
In the instant case the plaintiffs, Ben J. Mazzucco and 19 other enrolled Democrats in the Town of East Haven, appeal the removal of their names from the enrollment list of the Democratic Party of the town by the defendant Registrar of Voters at the urging of the defendant Democratic Town Chairman. The instant case is one of three related cases.
In Docket No. CV 96-0382337, five enrolled Democrats in the Town of East Haven ran on the Democratic ticket in the election of November 7, 1995, but largely cooperated with the 20 plaintiffs herein who ran on a third line and not on the Democratic ticket. In a second case, Docket No. CV 96-382135S, the same 20 plaintiffs involved in a constitutional challenge in the instant case brought a statutory challenge under § 9-63. In Docket No. CV 96-382135, this court, after excluding any CT Page 2743 constitutional considerations in that docket number, found that the 20 plaintiffs were properly erased from the party rolls pursuant to § 9-61. Accordingly, in the instant case, the court will examine in detail the plaintiffs' constitutional challenge to § 9-61 of the Connecticut General Statutes.
In the summer of 1995, the Democratic Party in East Haven appears to have split into at least two factions. One faction was led by then Democratic Mayor Luzzi and Democratic Town Chairman Andrew Verderame. The other faction was led by Ben J. Mazzucco, a challenger for the Mayoral nomination for the November 7, 1995 election. Twenty-five supporters of Mr. Mazzucco contested at a primary for spots on the November 7th ballot to run as Democratic candidates. Five of those candidates won the primary and ran in the November 7th election as Democrats. Twenty of those candidates, the plaintiffs herein, lost the primary and ran in the November election on the ballot under the designation of the "Better Government Party."
The five pro-Mazzucco candidates who won in the primary, while running on the Democratic ballot line, actively cooperated with Mr. Mazzucco and the 19 others who lost the primary and in effect ran as a 25-person team, five on the Democratic line and 20 on the Better Government line. In response to this, the Democratic Registrar of Voters, at the request of Town Chairman Verderame, cited the five who ran as Democrats for a party loyalty hearing pursuant to § 9-60. Following that hearing those five were expelled from the party although some others who were summoned to the hearing were not expelled. The 20 plaintiffs in the instant case, who ran on the line of the Better Government Party, and not on the Democratic line, were expelled without a hearing pursuant to the mandatory erasure statute, § 9-61.
DISCUSSION
The specific constitutional issues raised under the federal and state constitutions are that the act infringes upon the plaintiffs' right to freedom of association, the right to vote, and violates their right to equal protection and due process of law. Because the court agrees with the plaintiffs that § 9-61
unduly limits their freedom of association, it will not be necessary to review the other constitutional claims.
Freedom of association is a fundamental right guaranteed by the constitution of the United States. CT Page 2744
In 1992, the United States Supreme Court weighed the rights of individuals against the rights of political associations inBurdick v. Tukushi, 504 U.S. 428, 446 (1992), and the court held that the test requires the court to weigh:
 the character and magnitude of the asserted injury to the right protected by the first and fourteenth amendments that the plaintiffs seek to vindicate against the precise interest put forth by the state as justification for the burden imposed by its rule, taking into consideration the extent to which those interests make it necessary to burden plaintiffs' right.
[Although the above stated quote is from Justice Kennedy's dissent it is in a portion of the dissent in which he is articulating the rule adopted by the majority.]
While many state and federal decisions bear in one manner or another on the instant case, the case appears to resolve itself largely to four prior court decisions. In Marchitto v. Knapp,807 F. Sup. 916 (1993), Judge Daley in the District Court for Connecticut, found § 9-60, a section closely related to § 9-61, to be constitutional. In Burdick v. Tukushi, 504 U.S. 428
(1992), the United States Supreme Court, dealing with ballot access in the State of Hawaii, analyzed in considerable detail the rules to be applied when weighing the rights of associations against the rights of individuals to associate and vote. In Fandv. Legnard (Superior Court, Judicial District of Danbury, October 31, 1994), Judge Moraghan found the precise section in question, § 9-61, to be unconstitutional. In Mandanici v. Fischer
(Judicial District of Fairfield, February 22, 1984), Judge [now Justice] Berdon found § 9-61 to be unconstitutional.
Section 9-61 would appear to suffer from two possible defects on its face. First, the section as written is indifferent to party wishes. It requires mandatory erasure not simply erasure when requested by the party. This is true notwithstanding the fact that in the instant case the Town Chairman requested the Registrar to institute the erasure proceeding. The defendants argue that the Town Chairman's request eliminates the problem of the absence of a requirement of party preference. The court is not convinced that the mere fact that the Town Chairman in the CT Page 2745 instant case, aligned clearly with one faction, requested erasure is the equivalent of the statement of a party preference which might more clearly be ascertained from a Town Committee meeting at a minimum and a caucus at a maximum. Neither is the court convinced that the fact that there may have been a party preference in the instant case is sufficient to overcome the absence of such a requirement in the statute. Secondly, the statute appears to fail because it does not provide for a hearing. The defendants argue in this regard that no hearing was required because the plaintiffs have conceded that they ran on the Better Government line. There is no argument that both §§ 90-60 and 90-61 appear to establish a per se standard of disloyalty "in a case where the name of any elector appears on the ballot label at the election only under a party designation other than that of the party with which he is affiliated." However, the normal standard for discretionary erasure is a finding by the Registrar that a person is not "in good faith a member of, that political party and does not intend to support its principals or candidates." It appears to the court that the problem with the absence of a hearing is not that a hearing is required to determine whether the plaintiffs ran on the Better Government line only, but rather that a hearing is required to test whether their running on that line combined with all other facts and circumstances support a conclusion that they are not good faith members or do not intend to support the principals or candidates of the party. The per se standard, without more, is overly restrictive.
While the federal constitution merely establishes a "minimum national standard for the exercise of individual rights and does not inhibit state governments from affording higher levels of protection for such rights", Cologne v. West Farms Associates,192 Conn. 48, 57 (1984), it is not necessary in this case to decide whether the Connecticut constitution affords greater rights than the federal constitution since it is the opinion of the court that the mandatory disaffiliation act does not meet even the minimum federal constitutional standards.
In Mandanici, the court held:
 "Nevertheless, since the mandatory disaffiliation act burdens a fundamental constitutional right, it must pass strict judicial scrutiny." NAACP v. Button, 371 U.S. 425, 438 (1963). CT Page 2746
However, in Marchitto, the district court, relying on the post-Mandanici decision in Burdick v. Tukushi, held:
 "Although the plaintiffs claim — and the defendants appear to concede — that Connecticut's party disaffiliation statute must pass strict judicial review to survive, our case law does not so hold. Contrary to plaintiff's assertion, not every law that imposes a burden on the right to vote or on political association must be subject to scrutiny. Burdick v. Tukushi, ___ U.S. ___ (1992). Instead, the United States Supreme Court has adopted a flexible approach where by the rigorousness of `inquiry into the proprietary of state election law depends upon the extent to which a challenged regulation burdens first and fourteenth amendment rights.' [Citations omitted.] When a state election law provision imposes only "reasonable, nondiscriminatory restrictions upon the first and fourteenth amendment rights of voters, the state's important regulatory interests are generally sufficient to justify the restrictions." at 918.
The court acknowledges that strict judicial scrutiny is no longer the proper standard. The defendants claim that the state's compelling interests in erasing the plaintiffs' names as enrolled members of the Democratic Party is to provide political stability and prevent voter raiding. The court finds that the mandatory disaffiliation act serves neither purpose. The disaffiliation act comes into play only after a member has run on another ticket. As the court held in Mandanici:
 "The only conceivable purpose of the mandatory disaffiliation act is to punish the disloyal party member who runs for office under a different party label. The legislative history of the act indicates its intended effect was to punish the person." Mandanici,
at 14.
Even assuming that the compelling state purpose of the CT Page 2747 mandatory disaffiliation act is legitimate, it would still fail to pass constitutional scrutiny because such purpose could be achieved by less restrictive means. If the state has open to it a less drastic way of satisfying its legitimate interest, it may not chose a legislative scheme that broadly stifles the exercise of fundamental personal liberties. Kusper v. Pontikes, 414 U.S. 51,59-60 (1973).
It is also to be noted that while the mandatory disaffiliation act requires disaffiliation regardless of party wishes, the rules of the Democratic Party (state and local) contain no such disaffiliation. It has been held:
 "An attempt to interfere with a party's ability so to maintain itself is simultaneously an interference with the associational rights of its members." Nader v. Schaffer, 417 F. Sup. 837, 845 (D.C. Conn. 1976) aff'd. 429 U.S. 989 (1976).
As the court held in Fand:
 "A statute that seeks to insure that members are loyal to their political parties may well be a legitimate device for achieving this objective. However it is hardly clear just how the creation of an irrebuttable presumption of party disloyalty solely for a particular act engaged in by Fand will necessarily preserve the state's interest." [Emphasis in the original.] Fand, at 8.
The district court has upheld the constitutionality of § 9-60 where the respondent is given a chance to defend himself at a hearing and where the matter at issue is a determination of party loyalty. However, two superior courts, Fand and Mandanici,
have each struck down § 9-61 with its lack of hearing and irrebuttable presumption regardless of party motivation.
This court must either disagree with the conclusions inMandanici and Fand, find, something in Marchitto which leads to a different conclusion, or find § 9-61 unconstitutional.
While the court has attempted to fairly review the claims of the parties, the court recognizes that its decision in the CT Page 2748 instant matter is considerably more summary than either the decision of Judge Moraghan in Fand, or of Judge Berdon inMandanici. The court sees nothing to be gained from restating the many constitutional principles contained in those cases.
ORDER
The court concludes that § 9-61 which provides for the mandatory disaffiliation of a person whose name appears on a ballot label under a party designation other than that of the party in which he is an enrolled member is unconstitutional. It substantially infringes upon the person's freedom of political association guaranteed to him under the constitutions of the United States and the State of Connecticut. The defendants have failed to prove that there is a compelling stated interest which would justify the act and, even if there were, the defendants have failed to prove that less restrictive means could not have been used to achieve that purpose. Accordingly, the appeals of the 20 plaintiffs are sustained and the temporary injunction previously issued by this court restoring the names of the 20 plaintiffs to the Democratic enrollment list is made permanent.