**Wendy VANWIE and Lloyd F. Wright, Plaintiffs,**

**v.**

**George PATAKI, Governor of the State of New York; William Powers, Chairman, New York Republican State Committee; Judith Hope, Chairman of the NYS Democratic Committee; New York State Board of Elections;**

Neil W. Kelleher, Commissioner, New York State Board of Elections; Carol Berman, Commissioner, New York State Board of Elections; Evelyn J. Aquila; Helena Moses Donohue, Commissioner, New York State Board of Elections; Columbia County Board of Elections; Thomas Fisher, Commissioner of Columbia County Board of Elections; Joseph Finn, Commissioner of Columbia County Board of Elections; Dutchess County Board of Elections; William Paroli, Sr., Commissioner of Election or his successor; and William J. Egan, Commissioner of Election, Defendants.

State Committee of the Independence Party of New York State, Jack R. Essenberg, Chairman, and Individually, Amicus Curie.

No. 00–CV–322.

United States District Court, N.D. New York.

Feb. 29, 2000.

Galvin and Morgan, Delmar, NY (James E. Morgan, Madeline Sheila Galvin, of counsel), for plaintiffs.

Eliot Spitzer, Attorney General of the State of New York, Department of Law, Utica, NY (Joel L. Marmelstein, Asst. Attorney General, G. Lawrence Dillon, Asst. Attorney General, of counsel), for defendant, Governor George Pataki.

Pirro, Buley & Associates, Albany, NY (Jeffrey T. Buley, of counsel), for defendants, William Powers and Republican State Committee.

Fisher, Fisher & Berger, New York City (Stanley Kalmon Schlein, of counsel), for defendants, Judith Hope and NYS Democratic Committee.

Todd D. Valentine, Albany, NY for defendants, New York State Board of Elections and Dutchess County Board of Elections.

Fernandez, Burstein & Tuczinski, P.C., Albany, NY (Richard L. Burstein, of counsel), for defendant, Columbia County Board of Elections.

Thomas J. Spargo, East Berne, NY, for Amicus Curie, Independence Party.

## I. INTRODUCTION

HURD, District Judge.

Plaintiffs Wendy VanWie and Lloyd F. Wright ("VanWie" and "Wright" individually, and "plaintiffs" collectively) filed the instant action on February 22, 2000, alleging that they, as registered nonenrolled voters, were discriminated against by defendants' interpretation and application of New York Election Law §§ 5–210 and 5–304. An Order was issued on February 24, 2000, directing defendants to show cause why the defendants should not be restrained from taking actions against plaintiffs and other persons similarly situated, including, but not limited to, taking any steps which prohibit plaintiffs and others similarly situated from completing enrollment in a political party and from voting in the New York State Presidential Primary election to be held on March 7, 2000, pending a full hearing on plaintiffs' application for declaratory and injunctive relief. The State Committee of the Independence Party of New York State ("Independence Party") moved to intervene in opposition to the complaint.

Oral argument was heard on February 29, 2000, in Utica, New York. The motion by Independence Party to intervene was denied; however, the Independence Party was permitted to argue as *amicus curiae*. Decision was reserved.

## II. FACTS

Plaintiffs are and have been registered voters in the State of New York for some time. Neither plaintiff was enrolled in a political party. Rather, each plaintiff declined enrollment in a political party at the time of voter registration, choosing instead to remain independent from party affiliation. On February 4, 2000, VanWie submitted a completed change of enrollment form to the Columbia County Board of Elections purporting to change from a "blank," or nonenrolled registrant, to a registrant enrolled in the political party of her choice. On February 25, 2000, Wright submitted a similar change to the County Board of Elections in Dutchess County purporting to change from a "blank" enrollment to being enrolled in the political party of his choice.

New York Election Law provides that a registered voter who wishes to change party enrollment or nonenrollment status may do so at any time. However, any such change must be made prior to the twenty fifth day preceding the general election in order to become effective on the first Tuesday following the general election and to permit the enrollee to vote in the next primary elections, which occur in March and September. The Election Law provides:

> The term "change of enrollment" shall apply to applications by a registered voter already enrolled in one party to enroll in a different party, or to delete his enrollment in any party, or an application by a registered voter not enrolled in any party to enroll in a particular party. . . .
>
> A change of enrollment received by the board of elections not later than the twenty-fifth day before the general election shall be deposited in a sealed enrollment box, which shall not be opened until the first Tuesday following such general election. Such change of enrollment shall be then removed and entered as provided in this article.

N.Y.Elec.Law § 5–304(2)–(3) (McKinney 1998). Additionally, new registrants, not previously registered nor enrolled in a political party, are permitted to vote in a general, primary, or special election if they register to vote and enroll in a political party twenty-five days prior to that election. The applicable New York Election law provides:

> . . . any qualified person may apply personally for registration and enrollment, change of enrollment by mail or by appearing at the board of elections on any

day, except a day of election, during the hours that such board of elections is open for business.

Completed application forms, when received by any county board of elections and, with respect to application forms promulgated by the federal election commission, when received by the state board of elections, or showing a dated cancellation mark of the United States Postal Service or contained in an envelope showing such a dated cancellation mark which is not later than the twenty-fifth day before the next ensuing primary, general or special election, and received no later than the twentieth day before such election, or the tenth day before a special election, *shall entitle the applicant to vote in such election,* if he is otherwise qualified....

N.Y.Elec.Law § 5–210(1), (3) (McKinney 1998) (emphasis added).

In other words, in order to vote in the March 7, 2000, primary election, for example, a registered nonenrolled voter must have changed status to enroll in a political party at least twenty-five days prior to the November 1999 general election (October 12, 1999). However, a previously nonregistered person could become a voter and vote in March 7, 2000, primary election by registering to vote and enrolling in a political party twenty-five days prior to the March 7, 2000, primary election (February 10, 2000).

### III. DISCUSSION

Plaintiffs allege that as previously registered, nonenrolled voters they are discriminated against by the deferral of the effectiveness of their enrollment in the political party of their choice, as compared with previously unregistered voters, in violation of the United States Constitution and the Constitution, statutes, and common law of the State of New York. In other words, plaintiffs contend that the delayed effectiveness of their enrollment in the party of their choice in February 2000 until November 2000 is discriminatory. They contend that their enrollment in the political party of their choice should be effective at such time so as to qualify them to vote in the applicable political primary elections of March 7, 2000, in the same way that a previously nonregistered person's registration and enrollment in a political party on or before February 10, 2000, would qualify that person to vote in the appropriate March 7, 2000, primary election.

Initially, as was noted and agreed at oral argument, Wright submitted his change of enrollment form to the Dutchess County Board of Elections on February 25, 2000. Accordingly, he would in no instance be qualified to vote in the March 7, 2000, primary elections and any claims by him are dismissed.

The following analysis, therefore, applies only to VanWie and any other similarly situated previously registered nonenrolled voter who submitted a change of enrollment form enrolling in a political party of their choice to their local County Board of Elections on or before February 10, 2000.

The analysis is necessarily brief, due to the impending primary election that could be affected, scheduled to occur merely one week subsequent to this date.

■ Where the state burdens the weighty interest of citizens in their right to vote and to associate with political parties of their choice, the state's interest in imposing the burden must be compelling, and the restriction must be narrowly drawn to minimize any abridgment of such fundamental rights. *See, e.g., Tashjian`v. Republican Party of Connecticut,* 479 U.S. 208, 213–17, 107 S.Ct. 544, 93 L.Ed.2d 514 (1986).

New York's election law previously provided for a delayed enrollment period for newly registered voters and for those wishing to change their enrollment in a political party. The previous election law required a potential voter to both register and enroll in a political party thirty days prior to the general election in order to

qualify the voter to vote in the spring primary elections. *See generally Rosario v. Rockefeller*, 410 U.S. 752, 760–62, 93 S.Ct. 1245, 36 L.Ed.2d 1 (1973) (analyzing the lengthy time period between the enrollment deadline and the next primary election).

The delayed enrollment scheme adopted in New York State has been upheld as not constituting an unconstitutionally onerous burden on voters' exercise of the right to vote or the freedom of political association. *Id.* The *Rosario* Court held that the delayed effectiveness of New York's election laws, which at that time applied to both registered and unregistered voters alike, did not disenfranchise the class of newly registered voters. *Id.* Because the voters in *Rosario* could have timely registered and enrolled in a political party of their choice, but failed to do so, the Court found that "if their plight can be characterized as disenfranchisement at all, it was not caused by [the New York Election Law], but by their own failure to take timely steps to effect their enrollment." *Id.* at 758, 93 S.Ct. 1245.

■  Unlike the election law at issue in *Rosario*, the current law requires a changed political party enrollment to occur twenty-five days prior to the *general election* in order to qualify to vote in the following spring primary elections. However, the current law now permits previously unregistered persons to register (and enroll in a political party) twenty-five days prior to the *primary election* and to vote in that primary. Thus, the current election law treats registered and unregistered persons differently.

In order to pass constitutional muster, such a disparity in treatment between identifiable groups of voters must be justified by a compelling state interest. *See Tashjian*, 479 U.S. at 213–17, 107 S.Ct. 544.

A State's broad power to regulate the time, place and manner of elections 'does not extinguish the State's responsibility to observe the limits established by the First Amendment rights of the State's citizens.' *Tashjian v. Republican Party of Connecticut*, 479 U.S. at 217, 107 S.Ct. 544. To assess the constitutionality of a state election, we first examine whether it burdens rights protected by the First and Fourteenth Amendments. *Id.*, at 214, 107 S.Ct. 544; *Anderson v. Celebrezze*, 460 U.S. 780, 789, 103 S.Ct. 1564, 75 L.Ed.2d 547 (1983). If the challenged law burdens the rights of political parties and their members, it can survive constitutional scrutiny only if the State shows that it advances a compelling state interest, *Tashjian, supra*, at 217, 222, 107 S.Ct. 544; *Illinois Bd. of Elections v. Socialist Workers Party*, 440 U.S. 173, 184, 99 S.Ct. 983, 59 L.Ed.2d 230 (1979); *American Party of Texas v. White*, 415 U.S. 767, 780, and n. 11, 94 S.Ct. 1296, 39 L.Ed.2d 744 (1974); *Williams v. Rhodes*, 393 U.S. 23, 31, 89 S.Ct. 5, 21 L.Ed.2d 24 (1968), and is narrowly tailored to serve that interest, *Illinois State Bd. of Elections, supra*, at 185, 99 S.Ct. 983; *Kusper v. Pontikes*, 414 U.S. 51, 58–59, 94 S.Ct. 303, 38 L.Ed.2d 260 (1973); *Dunn v. Blumstein*, 405 U.S. 330, 343, 92 S.Ct. 995, 31 L.Ed.2d 274 (1972).

*Eu v. San Francisco County Democratic Central Committee*, 489 U.S. 214, 222, 109 S.Ct. 1013, 103 L.Ed.2d 271 (1989) (internal parallel citations omitted). Thus, the state must show that the different time requirements for enrollment in political parties for registered and nonregistered voters advance a compelling state interest.

An articulated state interest in permitting the later registration and enrollment for previously nonregistered persons is to encourage their participation in the democratic process of electing public officials. The state's intention in changing the election law to permit later registration and sooner participation by previously unregistered potential voters was to provide unregistered persons an incentive to register and vote.

This is a compelling state interest. The failure of so many of our citizens to take an active interest in public affairs is a very serious problem in this country. The right to vote is a cherished right which has been achieved at the sacrifice of countless lives. Legitimate efforts of government on the federal, state, and local levels to increase participation in our democratic election process must be encouraged. The statute at issue in this case represents one small legitimate effort made by the State of New York to increase participation in the election process by unregistered persons. Registered voters such as the plaintiffs need no such encouragement.

Furthermore, the New York Election Law is narrowly tailored to encourage the participation of those who had not previously voted, or those who had not recently voted as evidenced by lapsed registration. The provisions providing a shortened waiting period for new registrants does not affect the change of enrollment requirements for previously registered voters. Thus, no burden is placed upon previously enrolled voters such as plaintiffs. Plaintiffs, as previously registered voters, had every opportunity to submit change of enrollment forms electing to enroll in the political party of their choice before the October 12, 1999, deadline. Had they done so, they would be qualified to vote in the March 7, 2000, primary elections. Not having taken advantage of the opportunity to do so, their enrollment changes do not become effective until the first Tuesday after the November 2000 general election, pursuant to § 5–304.

## IV. CONCLUSION

The State compelling interest in encouraging participation in the democratic election process justifies the incentive of a shortened time period between registration and enrollment in a political party provided by New York Election Law § 5–210. The shortened time period provided to new registrants does not unduly burden the rights of previously registered voters who, under § 5–304 may change enrollment in political parties every year under the time constraints previously upheld by the United States Supreme Court in *Rosario*. Any other arguments or motions by the parties are moot.

Accordingly, it is

ORDERED that plaintiffs' complaint, seeking solely declaratory and injunctive relief, is DISMISSED in its entirety.

The Clerk of the Court is directed to enter judgment accordingly.

IT IS SO ORDERED.