Dennis FARRINGTON, Individually and on behalf of all others similarly situated, Plaintiff,

v.

ADJUTANT GENERAL OF the STATE OF MICHIGAN, Department of Military Affairs, Vietnam Veteran Era Bonus Section, Defendant.

No. G78–653 C.A.

United States District Court, W. D. Michigan, S. D.

July 2, 1980.

William G. Youatt, Haslett, Mich., for plaintiff.

Robert S. Welliver, Asst. Atty. Gen., Lansing, Mich., for defendant.

## OPINION

FOX, Senior District Judge.

Plaintiff, a retired United States Air Force officer and a decorated veteran of the Vietnam War, brings this class action for declaratory and injunctive relief under 42 U.S.C. §§ 1983 and 2202. The essence of his claim is that sections 35.1022(b) and (g)(iii) [1] of Michigan's Vietnam Veteran Era

---

1. In its entirety, M.C.L.A. 35.1022 reads as follows:

Sec. 2. As used in this act:

(a) "Period of service" means that period of time between 12:01 a. m., January 1, 1961, and 12:01 a. m., September 1, 1973.

(b) "Veteran" means a person who completed not less than 190 days of honorable service or is listed as missing in action or died during the period of service from service-connected causes in the army, air, naval, marine, or coast guard forces of the United States including the auxiliary branches, was a resident of this state for not less than 6 months before entering the service or before January 1, 1961, and has not applied for and received similar benefits from another state for the same period of service. The 190 days required active duty does not include a period when assigned full time by the armed forces to a civilian institution for a course substantially the same as a course offered to civilians; or a period served as a cadet or midshipman at a service academy, or active duty for training in an enlistment in the army or air national guard or as a reserve for service in the army, navy, air force, marine corps, or coast guard reserve, with the exception of those military personnel who converted to active duty immediately upon completion of the initial active duty for training as evidenced by noninterruption in pay status from that of initial active duty for training to that of active duty. The 190 days' active duty requirement shall not apply to a person who died or who received a medical discharge from active military service due to injuries or disease incurred in the line of duty, as verified by the veteran's records or by the veterans' administration.

(c) "Combat veteran" means a veteran listed as missing in action, or a veteran eligible

to wear the Vietnam service medal or the armed forces expeditionary medal if eligibility for the award occurred during the period of service.

(d) "Beneficiary", subject to section 14(2), means in relation to a deceased veteran or a veteran listed as missing in action, the surviving spouse, child or children, or the dependent surviving mother or father and in the order named which determination may be made by the probate court of the county of residence of the veteran at the time of death. A surviving parent of a veteran shall be eligible as a dependent of the veteran if that person had a reasonable expectation of support in whole or in part from the veteran and that expectation is stated in the application.

(e) "Honorable service" means that service as evidenced by:

(i) Honorable or general discharge, or separation under honorable conditions.

(ii) In the case of a person who has not been discharged, a certificate from the appropriate service authority that a person did qualify under subparagraph (i) as if the veteran was being discharged or separated.

Time lost while absent without leave, in desertion, in confinement while undergoing the sentence of a court-martial, or time lost while in a nonduty status because of disease contracted through the veteran's own misconduct shall not be construed as honorable service.

(f) "Adjutant general" means the adjutant general of this state.

(g) "Resident" means a person who has acquired a status as follows:

(i) Was born in and lived in this state until entrance into the armed forces of the United States.

(ii) Was born in, but was temporarily living outside this state, not having abandoned

Bonus Act, M.C.L.A. 35.1021–.1038, violate the Equal Protection Clause of the Fourteenth Amendment because the distinction which is used to determine if a veteran qualifies for benefits: (1) has no rational basis, and (2) infringes on the fundamental right to interstate travel. He requests that certain portions of the Act be stricken and that defendant Adjutant General of the State of Michigan be enjoined from denying benefits to class members.

## FACTS

Plaintiff, Dennis Farrington, was born in Kansas and moved to Oregon while still a youth. In 1954, he enlisted in the United States Air Force. He was commissioned as a Regular Air Force First Lieutenant in 1961, and in that same year he was transferred to K. I. Sawyer Air Force Base, Marquette, Michigan.

It is undisputed that after plaintiff's arrival he began to take steps toward becoming a Michigan resident, and that from 1962 through 1972 he was, in fact, a resident of the State. This is supported by the fact that during this period he: (1) joined a local church, (2) licensed his car in Michigan, (3) obtained a Michigan driver's license, (4) voted in local elections, (5) purchased a hand gun which he registered in the State, (6) bought resident licenses for hunting and fishing, and (7) bought property in the State in 1964 on which he has vacationed every year since, except 1966. Plaintiff also filed documents with the Air Force prior to, and during his service in Vietnam, listing Michigan as his residence, and even after he retired from the service in 1970, he

continued to reside here. In 1972, he transferred his residence to Florida where he attended law school. He never re-established Michigan residency and is now a resident of Oregon.

Two years after plaintiff gave up his Michigan residency, the Michigan Legislature authorize a state-wide referendum to determine if the State should borrow $205,000,000 through the issuance of general obligation bonds so that a bonus could be provided to qualifying veterans who served in the armed forces during the period of the Vietnam War, M.C.L.A. 35.1001–.1011. The electorate approved this in the general election of November 1974, and in December 1974, the Legislature enacted the Vietnam Veteran Era Bonus Act, M.C.L.A. 35.1021–.1038.

This Act provides payments to veterans who meet certain qualifications and who file their claim for benefits before June 30, 1980. Among the requirements that must be met is one that the veteran must have served in the armed forces between January 1, 1961 and September 1, 1973; a second requirement concerns the veteran's residency. As originally enacted, a veteran had to have been a resident of the State of Michigan for not less than six months before entering the service. P.A.1974, No. 370, § 2(b), as amended by P.A.1978, No. 491. The term "resident" was defined as a person who:

(i) Was born in and lived in this state until entrance into the armed forces of the United States.

residence in this state before entrance into the armed forces of the United States.

(iii) Had resided within this state for at least 6 months immediately before entrance into military service or before January 1, 1961, and had, before or during this 6 months' period:

(A) Registered to vote in this state.

(B) Lived with a parent or person standing in loco parentis who had acquired a residence as set forth in this subdivision, while an unemancipated minor.

(C) If not registered to vote in this state, was not registered to vote in another state, or had not voted in another state within 6

months before entering service or before January 1, 1961, and had resided in this state for at least 6 months immediately before entrance into the armed forces of the United States or 6 months before January 1, 1961.

(iv) Information appearing on the discharge documents of the veteran which shows a permanent address for mailing purposes, an address from which employment will be sought, or a home address at time of entry into service in another state, shall not necessarily be construed to mean that the veteran intended to abandon his or her residence in this state for purposes of this act.

(*ii*) Was born in, but was temporarily living outside this state, not having abandoned residence in this state before entrance into the armed forces of the United States.

(*iii*) Was born elsewhere but had resided within this state for at least 6 months immediately before entrance into military service and had before or during this 6 months' period:

(A) Registered to vote in this state.

(B) Lived with a parent or person standing in loco parentis who had acquired a residence as set forth in this subdivision, while an unemancipated minor.

(C) If not registered to vote in this state, was not registered to vote in another state, or had not voted in another state within 6 months before entering service, and had resided in this state for at least 6 months immediately before entrance into the armed forces of the United States. P.A.1974, No. 370, § 2(g), as amended by P.A.1978, No. 491.

On January 19, 1976, plaintiff filed an application for benefits under the Act. His claim was denied, allegedly because he had not resided in the State of Michigan for six months immediately preceding his entrance into military service. He appealed this to the Michigan Court of Claims, and on March 20, 1978, it affirmed the denial.

A few months after this, plaintiff filed this suit against the Adjutant General of the State of Michigan, whose duty it is to receive and review claims for benefits and to accept or reject them. M.C.L.A. 35.-1027(6) and (7). He alleges that the six-month residency requirements of P.A.1974, No. 370, §§ 2(b) and (g)(iii) violate the equal protection clause of the Fourteenth Amendment and infringe on his fundamental right to interstate travel, *see, Shapiro v. Thompson*, 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969). His equal protection argument is based on the fact that the statute classifies applicants for benefits on the length of their residency; however, his argument is not confined to this. He also alleges that the Act is unconstitutional because it pays benefits to those civilians who entered the service as Michigan residents, but denies benefits to those, like himself, who entered the service as a resident of another state and thereafter became a resident of Michigan.

After filing this complaint, plaintiff filed motions for class certification and for summary judgment, both of which were opposed by the State. The case was almost ready for this court to schedule hearings, when on January 15, 1980 the Act's residency requirements were expanded. A "veteran" is now defined as a person who was "a resident of this state for not less than 6 months before entering the service or before January 1, 1961 . . .." M.C.L.A. 35.1022(b) (Public Act of 1980, No. 213).[2] The definition of the term "resident" was also amended to comport with this language. M.C.L.A. 35.1022(g)(iii).[3] The Act's other terms, including its effective date of expiration, June 30, 1980, remain unchanged.

Plaintiff has not refiled a claim for benefits in the hope that he might now qualify, but the facts alleged in his complaint make it certain that even under the amended Act he would receive no bonus because he was not a "resident" prior to 1961. Plaintiff has also not formally amended his complaint to take into consideration these amendments but after listening to arguments presented to this court on the issue of class certification and after reviewing the parties' many briefs, it appears that both sides are properly focusing their attention on the constitutionality of the present law. It is this law which will be addressed by this opinion since it now governs who is to be paid benefits.

## ABSTENTION

In its answer to plaintiff's complaint, defendant raises the issue of abstention, arguing that this court should abstain from ren-

2. *Id.*

3. *Id.*

dering a decision on state law until plaintiff has availed himself of relief from the state courts. In raising the issue, defendant directs this court's attention to P.A.1974, No. 370, sec. 7a [Vietnam Veteran Era Bonus Act, M.C.L.A. 35.1027(1)]. This subsection merely requires that a claimant submit proof that he is entitled to a bonus to the defendant adjutant general. Plaintiff did this and his claim was rejected; he then appealed to the Michigan Court of Claims, M.C.L.A. 35.1027(6)–(8), which also denied his claim.

Defendant has not addressed the abstention issue in any pleading beyond his answer, so there is no motion and brief on this issue. This might be construed as an indication that defendant no longer wishes to have this issue considered, but to be safe this court will address it.

There are two primary types of federal abstention. The first is commonly referred to as *Pullman* abstention because it was first fashioned in 1941 in *Railroad Commission v. Pullman Co.*, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941); the second type is *Younger* abstention, which was established in *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). *See, Ohio Bureau v. Hodory*, 431 U.S. 471, 477–481, 97 S.Ct. 1898, 1902–1904, 52 L.Ed.2d 513 (1977).

### A.

██ *Pullman* abstention is based on the federal court's regard for the sovereignty of state courts and the reluctance to needlessly adjudicate federal constitutional issues if the parties may avail themselves of the state courts in order to obtain a construction of a challenged state law. *Zwickler v. Koota*, 389 U.S. 241, 250, 88 S.Ct. 391, 396, 19 L.Ed.2d 444 (1967). But the Supreme Court has cautioned that abstention is to be permitted in only "narrowly limited 'special circumstances,'" which justify the delay and expense occasioned by the invocation of the doctrine. *Lake Carriers' Assn. v. Mac-Mullen*, 406 U.S. 498, 509, 92 S.Ct. 1749, 1756, 32 L.Ed.2d 257 (1972).

The Supreme Court has accordingly held that *Pullman* abstention permits deference to state court adjudication only where the issue of state law is uncertain. *Kusper v. Pontikes*, 414 U.S. 51, 55, 94 S.Ct. 303, 306, 38 L.Ed.2d 260 (1973); *Zwickler v. Koota, supra*, 389 U.S. at 248–250, 88 S.Ct. at 395–396; *Harman v. Forssenius*, 380 U.S. 528, 534–535, 85 S.Ct. 1177, 1181–1182, 14 L.Ed.2d 50 (1965). As the Court in *Harman* ruled:

> If the state statute in question, although never interpreted by a state tribunal, is not fairly subject to an interpretation which will render unnecessary or substantially modify the federal constitutional question, it is the duty of the federal court to exercise its properly invoked jurisdiction.

*Id.*, at 535, 85 S.Ct. at 1182.

Those portions of Michigan's Vietnam Veteran Era Bonus Act are clear and unambiguous and flatly deny benefits to plaintiff and others similarly situated. This court can perceive no possible construction of the statutory language which would permit plaintiff to recover the bonus, and defendant has suggested none. In such case, *Pullman* abstention would be inappropriate.

### B.

██ *Younger* abstention "is primarily concerned . . . with considerations of comity and federalism, both as they relate to the State's interest in pursuing an ongoing state proceeding, and as they involve the ability of the state courts to consider federal constitutional claims in that context." *Ohio Bureau v. Hodory*, 431 U.S. 471, 477, 97 S.Ct. 1898, 1902, 52 L.Ed.2d 513 (1977). This rule only applies where there is a pending state court proceeding in which the state statute can be challenged. *Zablocki v. Redhail*, 434 U.S. 374, 379 and n.5, 98 S.Ct. 673, 677 and n.5, 54 L.Ed.2d 618 (1978).

No party in the instant dispute has indicated if there is a pending state court suit that could be frustrated by the declaratory and injunctive relief requested. Abstention will therefore be denied.

## CLASS CERTIFICATION

■ Plaintiff originally sought to represent the class of "all Michigan Vietnam veterans who are barred from receiving the Vietnam Era Bonus because of the six-month durational residency requirement [in the Act]." On May 2, 1980, this court heard plaintiff's motion and entered an order defining what it perceived to be the appropriate class.

This court held that plaintiff could not represent a class of those Vietnam veterans who were denied benefits because of the six-month durational residency requirement. The reason for this lay in the fact that the durational residency requirement was not the source of plaintiff's injury. This is best evident from the fact that even if this durational residency requirement were deleted from the Act, it would still require that an applicant for benefits have had some connection to the State of Michigan before entering the service, or before January 1, 1961. In his pleadings, plaintiff admits that he could not meet either of these requirements because he entered the service while a citizen of another state, and because he did not move to Michigan until June 28, 1961.[4] Since plaintiff had not sustained, or was not immediately in danger of sustaining a direct injury as the result of the six-month residency requirement then it was determined that he had no standing to challenge it as a class representative. *O'Shea v. Littleton,* 414 U.S. 488, 494, 94 S.Ct. 669, 675 38 L.Ed.2d 674 (1974); *Laird v. Tatum,* 408 U.S. 1, 13, 92 S.Ct. 2318, 2325, 33 L.Ed.2d 154 (1972). This lack of injury would also keep him from meeting the extra-constitutional requirement that his claim, as class representative, be typical of the class, as is required by Federal Rule of Civil Procedure 23(a)(3).

This did not mean that this court dismissed plaintiff's motion for class certification. In reading his pleadings and in listening to the arguments of his counsel, it seemed clear that plaintiff was really challenging those portions of the Act which grant a bonus only to claimants who were residents before entering the service or before 1961, and which exclude claimants like himself who entered the service from another state; who then became Michigan residents after 1961, and who, while a resident, completed the service requirements of M.L.C.A. 35.1022(b). This was found to be a "before and after" distinction, with the line drawn between those who were residents before a certain date, or before entering the service, and those who established residency after this date, or after entering service. The distinction, at least in plaintiff's case, was not based on the six-month durational residency requirement.

As a result, this court reformulated the class so it would be composed of servicemen like plaintiff. Both sides agreed that it was proper for the following class to be certified:

> Veterans who entered the service as a citizen of another state; who then became Michigan residents, for not less than six months, sometime after January 1, 1961, and while a resident met the service requirements of M.C.L.A. 35.-1022(b).

A "resident" was defined as someone who:

(a) registered to vote in this state, or

(b) if not registered to vote in this state, was not registered to vote in another state, or had not voted in another state.

This class met all the prerequisites of Rules 23(a) and 23(b)(2).

## MOTION TO DISMISS

■ In his complaint, plaintiff's prayer for relief asks that this court:

5. Order the Defendants, their successors in office, agents and employees to promptly pay all Michigan veterans previously denied VVEB [Vietnam Veterans Era Bonus] payments as a result of the six (6) month durational residency requirement and promulgate information explaining the removal of the six (6) month restriction to veterans in the same manner in which the law was originally published.

4. Plaintiff's Answers to Defendant's Interrogatories (pleading #10).

It appears that this prompted defendant to contend that plaintiff was really seeking the retroactive payment of benefits from the State, and therefore the State was the true defendant in this action. Defendant filed a motion to dismiss claiming that the Eleventh Amendment precluded an award of back benefits because the State had not waived its sovereign immunity, *see, Edelman v. Jordan,* 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974), and that plaintiff's claim under § 1983 must be dismissed because the State is not a "person" for purposes of that statute.

Plaintiff has countered by stating that he is not asking for an award of retroactive benefits. Instead, he writes that he is seeking: (1) injunctive relief, (2) declaratory relief, that is, the striking of unconstitutional language from the current law, and (3) reasonable attorney fees.

In *Edelman v. Jordan, supra,* the Supreme Court distinguished between claims against state officers for a retroactive award of state benefits and those claims seeking to prospectively enjoin state officers to conform their future conduct with the dictates of federal law or the federal constitution. The former claims are treated as being brought directly against the State and can be barred by an Eleventh Amendment defense of sovereign immunity, *Edelman v. Jordan, supra* ; the latter are not treated as claims against the State and are upheld, even though the state official, in conforming to the terms of the court order, would have to spend money from the state treasury. *Id.,* at 663–668, 94 S.Ct. at 1355–1358; *Ex parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908). The reason for this distinction was expressed by the Court in *Young,* at 159–160, 28 S.Ct. at 454:

> The answer to all this is the same as made in every case where an official claims to be acting under the authority of the state. The act to be enforced is alleged to be unconstitutional, and if it be so, the use of the name of the state to enforce an unconstitutional act to the injury of complainants is a proceeding without the authority of, and one which does not affect, the state in its sovereign or governmental capacity. It is simply an illegal act upon the part of a state official in attempting, by the use of the name of the state, to enforce a legislative enactment which is void because unconstitutional. If the act which the state attorney general seeks to enforce be a violation of the Federal Constitution, the officer, in proceeding under such enactment comes into conflict with the superior authority of that Constitution, and he is in that case stripped of his official or representative character and is subjected in his person to the consequences of his individual conduct. The state has no power to impart to him any immunity from responsibility to the supreme authority of the United States. See *In re Ayers, supra,* [123 U.S.] page 507 [8 S.Ct. 164, 31 L.Ed. 230]. It would be an injury to complainant to harass it with a multiplicity of suits or litigation generally in an endeavor to enforce penalties under an unconstitutional enactment, and to prevent it ought to be within the jurisdiction of a court of equity. If the question of unconstitutionality, with reference, at least, to the Federal Constitution be first raised in a Federal court, that court, as we think is shown by the authorities cited hereafter, has the right to decide it, to the exclusion of all other courts.

An example of a suit against state officials for prospective relief can be found in *Barnes v. Board of Trustees,* 369 F.Supp. 1327 (W.D.Mich.1973), an opinion from a three-judge panel of this court. In that case, a military veteran challenged the requirement that one had to be a resident of the State of Michigan for five years to qualify for aid from the Michigan Veterans Trust Fund. The court ruled that the durational residency requirement was unconstitutional, severed it from the statute, and entered an injunction ordering the defendants to search their records to ascertain all veterans whose applications had been rejected because of the residency requirement and notify them if it reasonably appeared that they were presently eligible for benefits.

The relief sought by plaintiff is no different than that requested in *Barnes.* This court is being asked to sever the allegedly unconstitutional portion of a statute from the body of the statute, and to then enjoin the defendant official so that he will comply with the law. This is prospective relief, and it is within this court's power to grant it, even if it has the ancillary effect of making defendant adjutant general spend more money from the state treasury than he would have under his previous course of conduct. *Edelman v. Jordan, supra,* 415 U.S. at 668, 94 S.Ct. at 1358.

Defendant's motion to dismiss is denied.

## EQUAL PROTECTION

As has been heretofore set forth, plaintiff's equal protection challenge is directed at those portions of the Vietnam Veteran Era Bonus Act which require that a claimant have been a resident of Michigan for not less than six months before entering military service or before January 1, 1961. M.C.L.A. 35.1022(b) and (g)(iii). Before I address the specific points of plaintiff's argument, I will set forth the appropriate test to be applied when a state statute is challenged on federal equal protection grounds.

Traditionally, equal protection analysis was a two-tier scheme, with courts applying either the strict scrutiny or rational basis standard. Strict scrutiny was applied whenever a state statute contained a "suspect classification" or limited a "fundamental right." Suspect classes have included, *e.g.,* race, *McLaughlin v. Florida,* 379 U.S. 184, 85 S.Ct. 283, 13 L.Ed.2d 222 (1964); alienage, *Graham v. Richardson,* 403 U.S. 365, 91 S.Ct. 1848, 29 L.Ed.2d 534 (1971); and ancestry, *Oyama v. California,* 332 U.S. 633, 68 S.Ct. 269, 92 L.Ed. 249 (1948). Fundamental rights have been defined as those rights "explicitly or implicitly guaranteed by the Constitution." *San Antonio Independent School District v. Rodriguez,* 411 U.S. 1, 33–34, 93 S.Ct. 1278, 1297, 36 L.Ed.2d 16 (1973). Such rights include, *e.g.,* those of privacy, *Roe v. Wade,* 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973); marriage, *Zablocki v. Redhail,* 434 U.S. 374, 98 S.Ct. 673, 54 L.Ed.2d 618 (1978); the vote, *Bullock v. Carter,* 405 U.S. 134, 92 S.Ct. 849, 31 L.Ed.2d 92 (1972); travel, *Shapiro v. Thompson,* 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969); and freedom of association, *NAACP v. Alabama,* 357 U.S. 449, 78 S.Ct. 1163, 2 L.Ed.2d 1488 (1958). Statutes subject to strict scrutiny are tested by whether or not they serve a compelling state interest. This is a high burden to meet and frequently the statutes have been found to violate equal protection.

The rational basis test is a relaxed standard which requires only a showing that the classification is rationally based. "If the classification has some 'reasonable basis,' it does not offend the Constitution simply because the classification 'is not made with mathematical nicety or because in practice it results in some inequality.'" *Dandridge v. Williams,* 397 U.S. 471, 485, 90 S.Ct. 1153, 1161, 25 L.Ed.2d 491 (1970), *quoting Lindsley v. Natural Carbonic Gas Co.,* 220 U.S. 61, 78, 31 S.Ct. 337, 340, 55 L.Ed. 369 (1911). Stated differently:

> The constitutional safeguard [of equal protection] is offended only if the classification rests on grounds wholly irrelevant to the achievement of the State's objective. State legislatures are presumed to have acted within their constitutional power despite the fact that, in practice, their laws result in some inequality. A statutory discrimination will not be set aside if any statement of facts reasonably may be conceived to justify it.

*McGowan v. Maryland,* 366 U.S. 420, 425–426, 81 S.Ct. 1101, 1105, 6 L.Ed.2d 393 (1961). *Accord, Holt Civic Club v. Tuscaloosa,* 439 U.S. 60, 71, 99 S.Ct. 383, 390, 58 L.Ed.2d 292 (1978).

In recent years another level of equal protection analysis has arguably appeared between strict scrutiny and the rational basis test, a "means scrutiny" test. *See* Gunther, *Forward: In Search of Evolving Doctrine on a Changing Court: A Model for a Newer Equal Protection,* 86 Harv.L. Rev. 1 (1972). This new standard has been used most notably in gender cases, *see, e.g., Califano v. Goldfarb,* 430 U.S. 199, 210–211,

97 S.Ct. 1021, 1029, 51 L.Ed.2d 270 (1977); *Reed v. Reed,* 404 U.S. 71, 75–76, 92 S.Ct. 251, 254, 30 L.Ed.2d 225 (1971); *but see Hollenbaugh v. Carnegie Free Library,* 439 U.S. 1052, 99 S.Ct. 734, 58 L.Ed.2d 713 (1978) (opinion sur denial of petition for certiorari, Marshall, J.). Under this new standard, a court inquires whether a challenged state statutory classification substantially furthers a purported legislative purpose. This requires that the State give greater justification for a statutory classification because the court will carefully study the factual assumptions underlying the supposed connection between legislative ends and means.

Plaintiff argues that the statute infringes on his fundamental right to travel and should be tested by a compelling state interest standard, *see, Shapiro v. Thompson, supra.* Defendant states that no right to travel, or other fundamental right, is involved in this case, and thus the State need "only meet the lesser test of a fair and substantial relationship." [5]

### A

■ Plaintiff's right to travel argument is focused on the six month durational residency requirement of M.C.L.A. 35.1022(b) and (g)(iii). The Supreme Court has looked with strong disapproval on many durational residency requirements because they create two classes of individuals: those who have resided in the state for more than the statutory period and those who have resided in the state for less than the statutory period. *See, e.g., Memorial Hospital v. Maricopa,* 415 U.S. 250, 94 S.Ct. 1076, 39 L.Ed.2d 306 (1974); *Dunn v. Blumenstein,* 405 U.S. 330, 92 S.Ct. 995, 31 L.Ed.2d 274 (1972); *Shapiro v. Thompson,* 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1968). *But see, Sosna v. Iowa,* 419 U.S. 393, 95 S.Ct. 553, 42 L.Ed.2d 532 (1974). This has been held to penalize those who recently moved to the state, and to deter others from making the same move.

The Court has ruled that this impacts on the fundamental right of interstate movement and therefore the statute's constitutionality must be judged by whether it promotes a compelling state interest, *Shapiro v. Thompson, supra,* 394 U.S. at 638, 89 S.Ct. at 1333.

While the statute in the instant case does contain a six month durational residency requirement, it is this court's position that plaintiff has not been injured by it, nor does it threaten him with injury. This is best seen in this court's ruling on class certification, *supra,* in which it recognized that even if the residency requirement were removed from the Act, plaintiff would still not qualify for a bonus. In fact, the denial of plaintiff's benefits was predicated on grounds other than the duration of his residence since he had resided in the State for almost ten years between 1962 and 1972. Thus, in plaintiff's case, the statute did not operate to create two classes, distinguished only by the length of their residency.

The classification which operated to exclude plaintiff from a bonus was one which distinguishes between those who were a resident prior to entering the service, or before 1961, and those who became a resident after entering service and after 1961. As this court noted in its decision on certification, this is a "before and after" distinction which is unrelated to the duration of the claimant's residency. It also does not impact on the right to travel in the same way that a durational residency requirement would. For this reason, this court will not test it under the standard of strict scrutiny.

### B

The question of whether this "before and after" distinction should be tested under the rational basis standard or the more stringent substantial relationship standard has apparently been resolved by the State's admission that the latter test is appropri-

---

**5.** Defendant's Supplemental Brief in Opposition to Plaintiff's Motion for Summary Judgment and in Support of Defendant's Motion for Summary Judgment, p. 4. *Accord* Defendant's

Brief in Opposition to Plaintiff's Motion for Summary Judgment and in Support of Defendant's Motion for Summary Judgment, p. 5.

ate.[6] Under this test, the statutory classification must substantially further the legislative purpose.

The first purpose put forward by the State is that the statute was intended to reward those persons who entered the service during the period of an unpopular war. The bonus is also said to provide encouragement to those who may fight our future wars because they will know that the State may reward them for their efforts, and this will supposedly help the service obtain men during periods of national need.

While these are laudable purposes, this court is of the opinion that the statutory classifications do not substantially further them. The Act, itself, defines the period of the Vietnam War as January 1, 1961 through September 1, 1973. M.C.L.A. 36.-1022(a). The statute, however, does not limit its benefits to only those who enlisted during this time period; it also provides a bonus to those residents who were residents of the state for six months before January 1, 1961. This latter group could include individuals who had already enlisted prior to January 1, 1961, and indeed, State legislative history indicates that this was the group intended to be protected.[7] By providing a bonus to this group, the State has totally undercut its argument that the statutory classifications were intended to encourage enlistments during an unpopular war so that state enlistment quotas could be met.

If the stated purpose of the Act is to reward those residents who served in the armed forces, so that future residents will be encouraged to serve, the statutory classification again fails. It is clear that the statute favors some residents over others, despite the fact that all may have served and fought together. This is best apparent in the statutory provision which gives a bonus to those individuals who enlisted from another state, but who were residents

of Michigan for six months prior to January 1, 1961, and which denies a bonus to those servicemen, like plaintiff, who enlisted from another state, but became a Michigan resident after 1961. Both groups are composed of legitimate citizens of the State, who served and fought as Michigan residents. The fact that one group became residents before a certain date does not make them better than those who migrated here at a later date. In fact, there are certainly many individuals in plaintiff's class who, in the period of time they were a Michigan resident, developed close ties to their adopted state and their adopted community so that their death in battle could certainly have been felt as deeply by their Michigan friends and neighbors as the death of a native son. To now tell these individuals that they are not entitled to some small share of a hero's welcome must come as a surprise.

This court cannot perceive how such an arbitrary classification serves to encourage residents of Michigan to serve in the armed forces. This court must therefore hold that this statutory distinction not only fails to serve the state's asserted purpose, but it fails in such a way as to invidiously discriminate between state residents in the payment of a bonus.[8]

The State's final argument is that the statutory classification serves the purpose of preserving the integrity of the State treasury. In *Shapiro v. Thompson, supra* at 633, 89 S.Ct. at 1330, the Court ruled that a state "may legitimately attempt to limit its expenditures." The Court continued, however, by holding that this goal could not be met through statutory classifications that are repugnant to the Constitution. *Id.* The State must do more than show that the classification saves money; it must show that it is also a legitimate exercise of its constitutional power.

---

6. *Id.*

7. Analysis—H.B. 4383 (10–3–79).

8. In reaching this decision, this court is not passing judgment on whether the Act can prop-

erly exclude from a bonus those individuals who entered the service as a citizen of another state and fought as a citizen of that state and after being discharged moved to Michigan.

This court has already determined that the State's classification is arbitrary and fails to serve the State's asserted purposes. Thus, the State cannot claim that the statute's distinctions are a proper means of controlling expenditures from the treasury.

## SEVERABILITY

 Since this court has found the statute's before and after distinction to be constitutionally infirm, at least as it relates to plaintiff and the class he represents, it must now consider whether it should strike down the entire Act, or just sever those offensive portions of the Act. Neither side has briefed this issue, but this court is of the opinion that severance is the better course.

The statutes in question are subject to the provision of M.C.L.A. 8.5, which states:

In the construction of the statutes of this state the following rules shall be observed, unless such construction would be inconsistent with the manifest intent of the legislature, that is to say:

If any portion of an act or the application thereof to any person or circumstances shall be found to be invalid by a court, such invalidity shall not affect the remaining portions or applications of the act which can be given effect without the invalid portion or application, provided such remaining portions are not determined by the court to be inoperable, and to this end acts are declared to be severable.

This is in essence the same test as the one set forth by the Supreme Court. *See, e.g., Champlin Refining Co. v. Corporation Commission,* 286 U.S. 210, 52 S.Ct. 559, 76 L.Ed. 1062 (1910); *United States v. Jackson,* 390 U.S. 570, 88 S.Ct. 1209, 20 L.Ed.2d 138 (1968).

Applying the foregoing provision to the statutes involved here, I am of the opinion that elimination of the offending language does not render the remainder of the statutory provision inoperable, or make it inconsistent with the manifest intent of the legislature.

Accordingly, the term "veteran" in M.C.L.A. 35.1022(b) is defined as "a resident of the state for nor less than 6 months, and has not applied for and received similar benefits from another state for the same period of service." The term "resident," defined in M.C.L.A. 35.1022(g)(iii) will now read: "Was born elsewhere but had resided within this state for at least 6 months and had during this 6 months' period . . .."

This court will enter an injunction ordering defendant to review the claims of plaintiff and the class he represents.