Dr. Allan A. GUTSTEIN, et al., Plaintiffs,

v.

Dr. Charles F. McDERMOTT, et al., Defendants.

Civ. A. No. 82–1073.

United States District Court, M.D. Pennsylvania.

Jan. 7, 1983.

William R. Balaban, Harrisburg, Pa., Norris D. Wolff, Vicki M. Cherkas, Kleinberg, Kaplan, Wolff & Cohen, P.C., New York City, for plaintiffs.

Michael Solomon, Harrisburg, Pa., for State Dental Council & Examining Bd.

Andrew S. Gordon, Allen C. Warshaw, Deputy Attys. Gen., Chief, Special Litigation Section, Harrisburg, Pa., for defendants.

## MEMORANDUM

CALDWELL, District Judge.

### I. Introduction

Before us for disposition is defendants' motion to dismiss or stay the present action. Defendants are members of the Pennsylvania State Dental Council and Examining Board (hereinafter "Dental Board") and were sued in their official and individual capacities by thirteen individual and four corporate plaintiffs. The individual plaintiffs are dentists or dental hygienists licensed to practice in Pennsylvania and are professionally employed by dental facilities using the trade name "Dentalworks." Plaintiff Dentalworks, Inc. has its principal place of business in Allentown, Pennsylvania, and has sold franchises for the establishment of wholly-owned subsidiaries at three other Pennsylvania locations. (For purposes of our discussion, unless otherwise indicated, references to "Dentalworks" shall include all four of the corporate plaintiffs.)

### II. Background

The present case originated when the individual plaintiffs were cited to appear simultaneously before the Dental Board at 10:00 a.m. on July 12, 1982, to show cause why their professional licenses should not be revoked or suspended for practicing under the "Dentalworks" trade name. Their conduct purportedly violated 49 Pa.Code § 33.22(a)(1), which provides as follows:

> The use of a trade name or an assumed name is prohibited. A dentist shall practice under his own name, the name of a dentist employing him who practices in the same office, a partnership name composed only of the name of one or more of the dentists practicing in a partnership in the same office or under a corporate name composed only of the name of one or more of the dentists practicing as employes of the corporation in the same office.

When settlement attempts were unavailing, plaintiffs prepared papers to be filed in federal court and submitted to defendants a written outline and memorandum regarding

the federal action. The Dental Board then adjourned the scheduled hearing date and filed a quo warranto and declaratory judgment action in the Commonwealth Court of Pennsylvania.[1] Writs of quo warranto were requested to cancel the Dentalworks charters and require dissolution of the corporations or, alternatively, to require that the corporations confine their activities to the purposes stated in their charters.[2] The other facet of the Commonwealth Court case seeks a declaratory judgment that Pennsylvania law and Dental Board regulations lawfully prohibit licensed dentists from using a trade name and that the individual respondents (plaintiffs in the federal court action) violated those prohibitions through their association with Dentalworks facilities.

On August 31, 1982, the present action in federal court was filed, pursuant to which plaintiffs also seek declaratory judgments on the constitutionality and enforceability of 49 Pa.Code § 33.22 and of 71 P.S. § 124, Pa.Adm.Code § 414, which mandates that members of the Pennsylvania Dental Association comprise a super-majority of the Dental Board. In addition, plaintiffs have requested a preliminary, as well as a permanent, injunction against enforcement of the aforesaid Pa.Code provision and have sought compensatory and punitive damages. Furthermore, since plaintiffs have also brought an antitrust claim, they have asked for treble damages pursuant to 15 U.S.C. § 15 and for costs plus attorneys' fees, as provided for in the federal antitrust law and in 42 U.S.C. § 1988.

### III. The Present Motion

On September 14, 1982, pursuant to discussions at a pre-trial/discovery conference, defendants urged that we defer any action pending the outcome of the Pennsylvania Commonwealth Court matter. In addition, defendants informally agreed not to pursue

hearings, etc. regarding plaintiffs' professional licenses. On September 21, 1982, defendants filed a motion and supporting memorandum that we dismiss all claims other than the antitrust claim and that we stay action on the latter. Alternatively, defendants urged that if we declined to dismiss any of the federal claims, we should, nevertheless, abstain from action pending resolution of the Commonwealth Court case. Plaintiffs filed a timely opposing memorandum. After consideration of the positions of the parties and independent review of the record and applicable law, we are denying defendants' motion in its entirety for the reasons discussed hereinafter.

### IV. *Pullman* Abstention

In the case of *Cohens v. Virginia,* 6 Wheat. 264, 404, 5 L.Ed. 257, 291 (1821), Chief Justice Marshall wrote,

It is most true that this court will not take jurisdiction if it should not; but it is equally true, that it must take jurisdiction if it should.... We have no more right to decline the exercise of jurisdiction which is given, than to usurp that which is not given. The one or the other would be treason to the constitution....

Although this observation may have been adhered to over the years by the Supreme Court, it has clearly not been the rule in the other federal courts, particularly since the emergence of the so-called abstention doctrines and the landmark case of *Railroad Commission of Texas v. Pullman Co.,* 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941). The *Pullman* case involved an attempt by the famous sleeping car company and affected railroads and porters to have a federal district court enjoin enforcement of a railroad commission order which required sleepers in Texas to be supervised by conductors, who were always white. Traditionally, porters, who were always black,

---

1. Petitioners in the action are the Dental Board and LeRoy S. Zimmerman, Attorney General of Pennsylvania. Respondents are the same individuals and corporations that are plaintiffs in the present federal case. *See* Exhibit B to plaintiff's memorandum.

2. The stated purpose, in addition to standard boilerplate language, is "[t]o design, construct, equip, administer and consult in dental offices." *See* Exhibit B to plaintiffs' memorandum.

were in charge of sleepers and on trains with several sleeping cars, were subject to the control of a train conductor. The major problem with which the federal judiciary was confronted, however, was whether the Texas civil statute which granted certain authority to the railroad commission empowered it to promulgate the order in question.

The Supreme Court held that since the proper interpretation of the statute was unclear, federal courts should defer to Texas courts. In remanding the case to the district court with directions to retain jurisdiction pending the outcome of state proceedings, the Court stated, "If there was no warrant in state law for the Commission's assumption of authority there is an end of the litigation; the constitutional issue does not arise. The law of Texas appears to furnish easy and ample means for determining the Commission's authority." 312 U.S. at 501, 61 S.Ct. at 645, 85 L.Ed. at 975.

In the four decades since the *Pullman* decision, the doctrine it enunciated has been expounded upon and interpreted hundreds of times as federal courts have wrestled with the abstention dilemma. The case of *Harman v. Forssenius,* 380 U.S. 528, 85 S.Ct. 1177, 14 L.Ed.2d 50 (1965), is particularly instructive on the matter before us. In *Harman,* the Supreme Court upheld a federal district court's refusal to grant a stay in order for the Virginia state courts to decide the constitutionality of state statutes setting forth qualifications for voting in state and federal elections. Essentially the qualifications concerned filing a residency certificate and paying a poll tax. In affirming the decision below, albeit on twenty-fourth amendment rather than Article I, § 2 and seventeenth amendment grounds, the Court concluded that the district tribunal had acted properly in reaching the merits and striking down the constitutionally repugnant provisions of Virginia franchise law. On abstention, the following conclusions were reached:

> In applying the doctrine of abstention, a federal district court is vested with discretion to decline to exercise or to postpone the exercise of its jurisdiction in

deference to state court resolution of underlying issues of state law. *Railroad Comm'n v Pullman Co.,* 312 US 496, 85 L ed 971, 61 S Ct 643 [footnote omitted]. Where resolution of the federal constitutional question is dependent upon, or may be materially altered by, the determination of an uncertain issue of state law, abstention may be proper in order to avoid unnecessary friction in federal-state relations, interference with important state functions, tentative decisions on questions of state law, and premature constitutional adjudication. E.g., *Railroad Comm'n v Pullman Co.,* supra. *The doctrine, however, contemplates that deference to state court adjudication only be made where the issue of state law is uncertain.* Davis v Mann, 377 US 678, 690, 12 L ed 2d 609, 616, 84 S Ct [1441, 1447]; *McNeese v Board of Education,* 373 US 668, 673–74, 10 L ed 2d 622, 626, 83 S Ct 1433 [1436–1437]; *Chicago v Atchison, T. & S.F.R. Co.,* 357 US 77, 84, 2 L ed 2d 1174, 1180, 78 S Ct 1063 [1067] [footnote omitted]. If the state statute in question, although never interpreted by a state tribunal, is not fairly subject to an interpretation which will render unnecessary or substantially modify the federal constitutional question, it is the duty of the federal court to exercise its properly invoked jurisdiction. *Baggett v Bullitt,* 377 US 360, 375–379, 12 L ed 2d 377, 387–389, 84 S Ct 1316 [1324–1326]. Thus, "recognition of the role of state courts as the final expositors of state law implies no disregard for the primacy of the federal judiciary in deciding questions of federal law." *England v. Louisiana State Board of Medical Examiners,* 375 US 411, 415–416, 11 L ed 2d 440, 445, 84 S Ct 461 [465].

380 U.S. at 534–35, 85 S.Ct. at 1181, 1182, 14 L.Ed. at 55 [emphasis supplied].

The *Harman* Court went on to note that the Virginia statutes were "clear and unambiguous in all material respects," and that the proponents of abstention had pointed to nothing in the law that could be construed by the state courts so as to avoid the need

for federal constitutional adjudication or to alter the essential nature of the problem. *Id.* 380 U.S. at 535–36, 85 S.Ct. at 1182, 14 L.Ed.2d at 55–56. We conclude that the Pennsylvania statutory provisions at issue in the present matter fall within the ambit of the discussion in *Harman,* i.e. that they specifically prohibit dentists from practicing under a corporate name unless that name is composed only of the names of one or more dentists practicing as corporate employees in the same office. It is undisputed that Dentalworks is a corporation, that all of the plaintiffs at times relevant to this action practiced at Dentalworks facilities, and that the Dentalworks corporate name does not include the name of any individual dentist. Accordingly, we can discern no possibility of the Pennsylvania Commonwealth Court deciding the declaratory judgment count favorably to the respondents (plaintiffs in the federal action).

Many other cases could be cited to illustrate the inapplicability of *Pullman* principles to the present matter, but we will confine our discussion to a few examples. In *Kusper v. Pontikes,* 414 U.S. 51, 94 S.Ct. 303, 38 L.Ed.2d 260 (1973), the Supreme Court again upheld a district court's decision not to abstain from deciding the constitutionality of an Illinois law that prohibited one from voting in a party primary election if within the preceding twenty-three months he had voted in another party's primary. Citing numerous other cases, including *Harman,* the majority of the Court affirmed that *Pullman* abstention should be narrowly limited to circumstances in which the delay and expense necessarily attendant to the invocation of abstention are justified. Moreover, the Court noted,

> Where, on the other hand, it cannot be fairly concluded that the underlying state statute is susceptible of an interpretation that might avoid the necessity for constitutional adjudication, abstention would amount to shirking the solemn responsibility of the federal courts to "guard, enforce, and protect every right granted or secured by the Constitution of the United States," *Robb v Connolly,* 111 US 624, 637, 28 L Ed 542, 4 S Ct 544.

414 U.S. at 55, 94 S.Ct. at 306, 38 L.Ed.2d at 265. More recently, the abstention language in *Harman* and *Kusper* was extensively quoted in *Babbitt v. United Farm Workers National Union,* 442 U.S. 289, 99 S.Ct. 2301, 60 L.Ed.2d 895 (1979), wherein the Court reversed a decision below partially on the ground that abstention was required with regard to certain provisions of the challenged Arizona state law which were ambiguous and thus susceptible to varying interpretations. Accordingly, deference to the state courts was deemed mandatory.

As our discussion has indicated, the controlling inquiry in *Pullman* abstention is whether the state provision under federal constitutional attack is unclear, ambiguous, or unsettled. If the answer is negative, as with the statutes confronted in *Harman* and *Kusper, Pullman* principles are inapplicable and abstention is inappropriate. We have carefully examined the language of 49 Pa.Code § 33.22(a)(1) and find it to be clear, unambiguous, and certain. Plaintiffs appear unquestionably to be violating state law and the abstention doctrine in *Pullman* must be rejected in the present case. Our decision is not altered by the remote possibility that the Commonwealth Court might be able to construe the law so as to present the constitutional issues in a different posture since "[i]t has been said that the state law normally must be so uncertain as to be 'fairly subject' to differing interpretations." *Three Rivers Cablevision, Inc. v. City of Pittsburgh,* 502 F.Supp. 1118, 1123 (W.D.Pa. 1980). *See also Wisconsin v. Constantineau,* 400 U.S. 433, 91 S.Ct. 507, 27 L.Ed.2d 515 (1971); *Zwickler v. Koota,* 389 U.S. 241, 88 S.Ct. 391, 19 L.Ed.2d 444 (1967). Having discerned no such uncertainty, we must, therefore, not abstain from moving forward to a decision on the merits of the plaintiffs' claims unless some other valid basis exists for abstention.

## V. *Younger* Abstention

Defendants have urged that we dismiss plaintiffs' claims with the exception of the claim based upon federal antitrust law,

which cannot be pursued in a state court. This position is grounded in the case of *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971) and the basic premise of *Younger* abstention or "Our Federalism" is the avoidance of disruption of an ongoing state judicial proceeding. In *Younger* an individual indicted for violation of a California criminal syndicalism statute asked that a federal district court enjoin enforcement of the act on first and fourteenth amendment grounds. A three judge district court panel granted the requested relief and the state appealed to the United States Supreme Court, which reversed, giving careful consideration to the particular facts of the matter.

It is significant to note that the *Younger* Court, despite the sweeping language in some parts of the majority opinion, did not conclude that intervention into pending state matters is never warranted. For example, the Court focused on several earlier cases involving injunctions against the enforcement of state criminal statutes, including *Dombrowski v. Pfister,* 380 U.S. 479, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965). As the *Younger* Court indicated, in *Dombrowski* an injunction was deemed appropriate under the circumstances since plaintiffs were able to "sufficiently establish the kind of irreparable injury, above and beyond that associated with the defense of a single prosecution brought in good faith, that had always been considered sufficient to justify federal intervention." 401 U.S. at 48, 91 S.Ct. at 752, 27 L.Ed.2d at 678. The *Younger* Court expressly refused to speculate on the limits to which its holding could be expanded and stated,

> There may, of course, be extraordinary circumstances in which the necessary irreparable injury can be shown even in the absence of the usual prerequisites of bad faith and harassment.... Other unusual situations calling for federal intervention might also arise, but there is no point in our attempting now to specify what they might be. It is sufficient for

purposes of the present case to hold, as we do, that the possible unconstitutionality of a statute "on its face" does not in itself justify an injunction against good-faith attempts to enforce it, and that appellee Harris has failed to make any showing of bad faith, harassment, or any other unusual circumstance that would call for equitable relief.... [O]ur holding rests on the absence of the factors necessary under equitable principles to justify federal intervention....

401 U.S. at 53–54, 91 S.Ct. at 754–755, 27 L.Ed.2d at 681.

Within six years of the pronouncement of the *Younger* doctrine, it had been expanded and applied in other contexts, often over strong dissent, particularly in the Supreme Court. For instance, in *Hoffman v. Pursue, Ltd.,* 420 U.S. 592, 95 S.Ct. 1200, 43 L.Ed.2d 482 (1975), the six member majority applied *Younger* principles to remand a matter to the district court to determine the "irreparable injury" issue and thus decide whether the district court should have abstained from granting injunctive relief against a state court judgment enforcing a nuisance statute. The federal court had also declared the statute unconstitutional on first amendment grounds.[3] The three dissenters (Justice Brennan, joined by Justices Douglas and Marshall) argued against the potential further extension of *Younger* principles into the realm of state civil proceedings, particularly where an action in federal court is brought pursuant to 42 U.S.C. § 1983 and reasoned that "[t]he fact, standing alone, that state courts also must protect federal rights can never justify a refusal of federal courts to exercise that jurisdiction." 420 U.S. at 617, 95 S.Ct. at 1214, 43 L.Ed.2d at 500.

In *New Jersey Education Ass'n v. Burke,* 579 F.2d 764 (3d Cir.1978) similar concerns about expansion of the *Younger* doctrine were expressed in the court's observation that "as a doctrine travels beyond the cir-

---

**3.** The abstention issue had not been raised in the federal district court, nor had the court considered it *sua sponte.*

cumstances which generated it, the reasons which gave rise to that doctrine grow more attenuated, and the court is progressively more likely to encounter offsetting policies not present in the original application." *Id.* at 765. A more recent case following the *Burke* rationale is *Phillips v. Pennsylvania Higher Education Assistance Agency,* 657 F.2d 554 (3d Cir.1981).

■ In the present matter, we have found several of these "offsetting policies." First, we note that *Younger* dealt with enjoining a pending state criminal proceeding and barred federal interference therein absent extraordinary circumstances. The current matter entails no state criminal laws. Accordingly, expansion of the *Younger* doctrine must be approached with extreme caution. Second, in the cases we have examined, litigants have gone to federal court when a state matter was legitimately pending. We have not been referred to a case that speaks directly to our current concern, i.e. the "race to the courthouse" precipitated in the present litigation. Plaintiffs have alleged, however, and defendants have not disputed, that plaintiffs informed them of their intent to file a federal lawsuit and that before the suit could be filed, defendants filed their state action. Our concern here is that by subscribing to *Younger* principles and dismissing plaintiffs from their federal forum on other than the antitrust claim, we would be encouraging the engineering of a "pending" state judicial proceeding whenever potential federal litigants indicate that they intend to invoke federal jurisdiction. In other words, we are reluctant to encourage parties to "race" in the foresaid manner and to permit *Younger* principles to be invoked when a state suit appears to be brought primarily to usurp a federal cause of action.

Third, contrary to defendants' position, we are not persuaded that the recent case of *Middlesex County Ethics Committee v. Garden State Bar Ass'n,* —— U.S. ——, 102 S.Ct. 2515, 73 L.Ed.2d 116 (1982), mandates a different result. The narrow issue answered affirmatively in that case was "whether a federal court should abstain from considering a challenge to the constitutionality of disciplinary rules that are the subject of a pending state disciplinary proceeding within the jurisdiction of the New Jersey Supreme Court." —— U.S. at ——, 102 S.Ct. at 2518, 73 L.Ed.2d at 120. The disciplinary proceeding was against an attorney for statements made in a press conference at the time a former client was being tried for murder. After receiving a formal complaint, the attorney attempted to sidestep the state proceedings and brought a federal action grounded in a first amendment challenge to the disciplinary rules. The district court dismissed in order that the state have an opportunity to interpret these rules. A divided Third Circuit panel reversed on the basis that the state proceedings would not provide a meaningful chance for consideration of the constitutional claims. In reversing and remanding the Supreme Court five member majority opinion stated,

> Respondents have not challenged the findings of the District Court that there was no bad faith or harassment on the part of petitioners and that the state rules were not "flagrantly and patently" unconstitutional. [citations omitted]. We see no reason to disturb these findings, and no other extraordinary circumstances have been presented to indicate that abstention would not be appropriate. [footnote omitted].

—— U.S. at ——, 102 S.Ct. at 2524, 73 L.Ed.2d at 128.

Justice Brennan's separate concurring opinion reiterated his view that *Younger* is generally inapplicable to civil proceedings but agreed with the majority that "exceptional deference" is appropriate when a state court is proceeding against a member of the state's bar given the "traditional and primary responsibility of state courts for establishing and enforcing standards for members of their bars and the quasi-criminal nature of bar disciplinary proceedings." —— U.S. at ——, 102 S.Ct. at 2524, 73 L.Ed.2d at 128. Moreover, we note that an earlier Third Circuit decision, *Gipson v. New Jersey Supreme Court,* 558 F.2d 701,

703–04 (3d Cir.1977), had recognized this special state court-state bar relationship and had opted for federal non-interference in a pending state disciplinary action.

We cannot end our discussion of the *Middlesex* case without also pointing out that the disciplinary procedure being utilized by the state guaranteed that the New Jersey Supreme Court would consider constitutional challenges to the rules.[4] In the present matter, defendants allege that the constitutional claims may be raised in the disciplinary proceedings before the Dental Board but concede that the Board may be unable to adjudicate those claims. They go on to argue, however, that the Commonwealth Court provides a forum for those claims. While this may be true, it is nevertheless apparent that plaintiffs had chosen a federal forum *before* the Commonwealth Court action was filed.

Finally, we reject defendants' argument for *Younger* abstention on the ground of the holding in *Friedman v. Rogers,* 440 U.S. 1, 99 S.Ct. 887, 59 L.Ed.2d 100 (1979). In *Friedman* an optometrist challenged provisions of Texas law that prohibited trade names in the practice of optometry and governed the composition of the Optometry Board so that four of the six members were required to be members of a state affiliate of the American Optometric Association (AOA). Rogers was a Board member but he and other Texas optometrists who favored so-called "commercial" optometry were ineligible for membership in the only state affiliate of the AOA, and therefore could never be allied with a majority of the Board. Cross appeals were taken to the Supreme Court after a three judge district court panel upheld the latter provision but had declared the trade name ban unconstitutional on first amendment grounds.

The Supreme Court concluded that both provisions of Texas law were constitutional. Although the expansive language of the part of the majority opinion addressing

trade names can be read to stand for the proposition that they may always be properly prohibited because of the significant danger they pose of misleading the public, we find that the decision was not intended to sweep so broadly. For example, the Court noted that "[t]he concerns of the Texas Legislature about the deceptive and misleading uses of optometrical trade names were not speculative or hypothetical, but were based on experience in Texas with which the legislature was familiar." 440 U.S. at 13, 99 S.Ct. at 895, 59 L.Ed.2d at 112.

Moreover, the Court catalogued specific abuses that had occurred in Texas, such as the operation by an optometrist of seventy-one offices under at least ten different names to give an impression of competition. *Id.* 440 U.S. at 14, 99 S.Ct. at 896, 59 L.Ed.2d at 113. The Court concluded, "It is clear that the State's interest in protecting the public from the *deceptive* and *misleading* use of optometrical trade names is *substantial* and *well demonstrated.*" *Id.* 440 U.S. at 15, 99 S.Ct. at 896, 59 L.Ed.2d at 113 (emphasis supplied). More recently the Supreme Court confirmed the fact that the *Friedman* holding on trade names was based on the "considerable history in Texas of deception and abuse." *In the Matter of R.M.J.,* 455 U.S. 191, 202, 102 S.Ct. 929, 937, 71 L.Ed.2d 64 (1982). Therefore, defendants' argument that trade name prohibitions unequivocally withstand constitutional challenges must fail. For these and the previously discussed reasons, coupled with the specific allegations by plaintiffs of bias, bad faith, and harassment, defendants' argument for *Younger* abstention is rejected.

VI. Conclusion

As our foregoing discussion has indicated, we conclude that abstention on the basis of either the *Pullman* or the *Younger* doctrine is inappropriate. An order was entered to that effect on December 30, 1982, and this

---

4. Although this guarantee did not exist when the proceedings against the attorney were begun, it was promulgated during the course of the litigation and the state court had already

heard argument on the constitutional issues while review in the United States Supreme Court was pending.

memorandum confirms the denial, based on these abstention principles, of defendants' motion and alternative motions.