John E. BARLEY, Thomas B. Stish, Matthew J. Ryan, John M. Perzel, Plaintiffs,

v.

LUZERNE COUNTY BOARD OF ELECTIONS, and Rose S. Tucker, Frank P. Crossin, Jim Phillips, Members of the Luzerne County Board of Elections, Defendants.

Civil Action No. 1:CV–95–0001.

United States District Court, M.D. Pennsylvania.

Aug. 4, 1995.

John P. Krill, Jr., Linda J. Shorey, David R. Fine, Kirkpatrick & Lockhart, Harrisburg, PA, for plaintiffs.

Joseph J. Heston, Patrick E. Dougherty, Dougherty, Levanthal & Price, Kingston, PA, for defendants.

W. Thomas McGough, Jr., Reed Smith Shaw & McClay, Pittsburgh, PA, Megan A. Messner, Pittsburgh, PA, for Michael Edmiston, Reizdan Moore.

*MEMORANDUM*

CALDWELL, District Judge.

## I. *Introduction.*

In this civil-rights action under 42 U.S.C. § 1983, the plaintiffs, John E. Barley, Thomas B. Stish, Matthew J. Ryan and John M. Perzel, all members of the Pennsylvania House of Representatives, allege, in part, that the defendants, the Luzerne County Board of Elections, and two members of the three-member Board, Rose S. Tucker and Frank P. Crossin, violated their right to freedom of association under the first amendment. The plaintiffs are all members of the Republican party, but Stish used to be a Democrat, and his conversion to the Republicans has given rise to this action. Tucker and Crossin are Democrats.

Pursuant to Fed.R.Civ.P. 12(b)(6), the defendants have filed a motion to dismiss the plaintiffs' amended complaint. In deciding their motion, we must accept as true the factual allegations of the plaintiffs' pleading and construe any inferences to be drawn from the complaint in the plaintiffs' favor. *See Kost v. Kozakiewicz*, 1 F.3d 176 (3d Cir.1993). With this standard in mind, we briefly set forth the background to this litigation, as the plaintiffs allege it.

## II. *Background.*

On November 8, 1994, Pennsylvania held a general election to fill various elected positions at the state and local level. Stish was a candidate for the seat in the House of Representatives representing the 116th Legislative District, located in Luzerne County. (Amended complaint, ¶¶ 15 and 16). He was a registered Democrat and had won the Democratic primary election to determine the Democratic candidate for the seat. (*Id.*, ¶ 16). Stish won the election as a Democrat. (*Id.*, ¶ 17).

On or about November 14, 1994, the Board recorded Stish as the winner. (*Id.*, ¶ 17). On or about the same date, Stish announced he was becoming a Republican, (*id.*, ¶ 18), and was going to join the House Republican Caucus. (*Id.*). Ryan is the leader of the Republican Caucus, (*id.*, ¶ 4), and Perzel and Barley are members of the Caucus leadership. (*Id.*, ¶¶ 5 and 6). Pursuant to state law, the Board shortly thereafter certified the County election returns to the Secretary of the Commonwealth, thereby certifying Stish as the winner of the election. (*Id.*, ¶ 19).

In response to Stish's announcement, three Democratic voters filed suit against the Board in the Court of Common Pleas of Luzerne County, alleging that Stish's change in parties after the election amounted to a " 'fraudulent misrepresentation' " and they sought to prevent or nullify his certification. (*Id.*, ¶ 24).

On December 22, 1994, the County court issued an order requiring the Board to investigate the voters' claim and to suspend Stish's certification. (*Id.*, ¶ 25). On December 23, 1994, Crossin and Tucker, the two Democratic members of the Board, wrote a letter to the Secretary of the Commonwealth, suspending his certification pursuant to the court order. (*Id.*, ¶ 26). On December 28, 1994, the County court vacated that part of its order requiring the Board to suspend the certification as having been "improvidently granted." (*Id.*, ¶ 28). On Friday, December 30, 1994, the Board issued a notice of its intent to hold a public meeting on Tuesday, January 3, 1995, at 9:00 a.m. to decide if the suspension of Stish's certification should be continued. (*Id.*, ¶ 29).

That was also the date members of the new House of Representatives were to be sworn in. (*Id.*, ¶ 31). The Clerk of the House would normally use a certified list of winners compiled by the Secretary of the Commonwealth from the reports of the various County Boards of Elections to prepare the master roll of representatives. (*Id.*). However, the Board voted two to one, along party lines (Tucker and Crossin in the majority), to continue the suspension. A letter to that effect was received by the Secretary at about 11:45 a.m. on January 3. (*Id.*, ¶ 35).

Consequently, the Secretary did not appear as scheduled in the House with a certified list of the winners as required by state law. Instead, he sought a declaratory judgment from the Pennsylvania Commonwealth Court temporarily suspending his obligation

to do so. (*Id.*, ¶ 36). In the afternoon of January 3, the court denied his request, reasoning that the Board's suspension of Stish's certification was not justified by the statutory authority it cited in its letter. (*Id.*, ¶ 38).

The Secretary then sent a letter to the Clerk of the House certifying that a list previously sent to the Clerk, including Stish's name, should be considered the certified list of winners, (*id.*, ¶ 39), and all the House members were eventually seated on January 3. Subsequently, the County court also assumed jurisdiction of the Democratic voters' suit. (*Id.*, ¶ 40).

The plaintiffs allege that Tucker and Crossin acted against Stish because he "exercised his first amendment rights of freedom of speech and association and switched his party affiliation from Democrat to Republican." (*Id.*, ¶ 44). In support, they aver that none of the statutory grounds for the Board to consider suspending Stish's election results existed since no one had alleged that the election had been conducted fraudulently as to how the votes had been cast or counted. (*Id.*, ¶ 34). They also assert that his rights to equal protection and due process were violated. As to the other plaintiffs, they aver that their first amendment right of political association was violated. The plaintiffs seek both compensatory and punitive damages against Tucker and Crossin, the latter damages based on their "malicious[ ]" conduct. (*Id.*, ¶ 44) (brackets added). The plaintiffs also seek a declaration that Stish's "right to change political association is protected by the United States Constitution." They seek only injunctive relief against Jim Phillips, a Republican and the minority Board member.

### III. *Discussion.*

■ The defendants first argue that the complaint must be dismissed because they acted in response to, and based on, the County court order requiring them to investigate Stish. We reject this argument. As the plaintiffs have noted, the defendants were under no compulsion to suspend the certification on January 3. By the time Tucker and Crossin had ratified the original suspension on that day, the County court had vacated its mandate that the Board suspend the certifi-

cation. In these circumstances, the County court order does not relieve them of liability.

■ In moving to dismiss the equal protection and due process claims, the defendants next argue that the amended complaint does not support an inference that they acted with any animus toward Stish. They rely on the contention that they initially certified his election results on November 21, 1994, about eight days after he announced his change in party, and did not act at all until the Board was ordered to do so by the County court.

These arguments cannot prevail on a motion to dismiss. First, it is not clear where the defendants obtained the November 21 date since it is not alleged in the complaint. Second, even if their contention is true, that fact is not sufficient for us to dismiss the complaint. As the plaintiffs argue, Tucker and Crossin still appear not to have had a reasonable statutory basis for suspending the certification, and the plaintiffs do allege that the defendants acted to violate the plaintiffs' constitutional rights. In connection with the court order, as we noted above, Tucker and Crossin were under no court mandate when they ratified the original suspension on January 3. This was a discretionary act that cannot be excused by the court's remaining proviso that they investigate the circumstances surrounding the election.

The defendants' motion, having advanced no other reasons to dismiss the equal protection and due process claims, will therefore be denied as to these two claims.

■ The defendants next argue that the claim based on their first amendment right to freedom of association must be dismissed because the plaintiffs suffered no injury. Stish was sworn in along with the other representatives, so while there might have been a short delay in taking his seat, that delay was, in their view, at most de minimis and not actionable. They further argue that this fact also renders the claims for declaratory and equitable relief, and indeed the whole case, moot.

In opposition, the plaintiffs argue that Stish was injured when Tucker and Crossin suspended his certification and that he is at least entitled to nominal damages for this

violation. They also contend that the other plaintiffs were injured by the same conduct and that they have suffered additional injury because the defendants have chilled their associational rights by discouraging other Democrats from switching parties. They further argue that equitable relief is not moot because the Board could still conduct harassing investigations of Stish.

The first amendment protects a person's right to associate with those who share his political views. *Rutan v. Republican Party of Illinois*, 497 U.S. 62, 69, 110 S.Ct. 2729, 2734, 111 L.Ed.2d 52, 63 (1990); *Kusper v. Pontikes*, 414 U.S. 51, 56, 94 S.Ct. 303, 307, 38 L.Ed.2d 260, 266 (1973), and this right specifically extends to the "right to associate with the political party of one's choice." *Id.*, at 56, 94 S.Ct. at 307, 38 L.Ed.2d at 266. Further, the amendment protects legislators as well as private citizens. *Bond v. Floyd*, 385 U.S. 116, 87 S.Ct. 339, 17 L.Ed.2d 235 (1966) (first amendment right of free speech extends to state legislator).

In light of these principles, we conclude that Stish has stated a cause of action for violation of his right to freedom of association based on the January 3 suspension. This suspension injured him because it put in doubt whether he would take his seat as a member of the House of Representatives. It is irrelevant that any delay in taking his seat was brief. That fact would have an impact only on the amount of compensatory damages, if any, Stish could recover. If Tucker and Crossin suspended Stish from an improper motive, Stish would be entitled to at least nominal damages of $1.00 for the violation of his fundamental right to association. *See Carey v. Piphus*, 435 U.S. 247, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978) (nominal damages approved for violation of right to procedural due process).

The remaining plaintiffs have not alleged a valid associational claim. They argue that they have been injured by the suspension as well, but we reject this. The suspension was directed at Stish, not the other plaintiffs. They also argue that their associational rights have been injured because other Democrats have been frightened from switching parties. If true, this could be an injury entitling the plaintiffs to relief. However, as the defendants have pointed out, they did not plead this injury in the complaint, relying instead solely on the suspension issued to Stish. Fed.R.Civ.P. 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief. . . ." Since the other plaintiffs have failed to allege any injury, we will dismiss their claims.

In regard to the claim for equitable relief, while it does seem farfetched that the Board would be conducting any further investigations in this matter (especially since the County court has reassumed jurisdiction of the Democratic voters' lawsuit), we can deal with this issue if it arises as this case proceeds. We see no need at this juncture to flatly refuse to consider equitable relief.

The defendants next argue that they are entitled to absolute immunity because they were acting under a court order. However, as we noted above, the court order did not require any particular result and we reject this argument.

The defendants also argue that they are entitled to qualified immunity under 42 Pa.C.S. § 8546 and federal case law. In support, they again assert that they only investigated Stish because they had been ordered to do so by the court. Further, they maintain they consulted with counsel before doing so.

We agree with the plaintiffs that this immunity argument must be rejected. First, state law cannot immunize a person against a federal civil-rights action. *Good v. Dauphin County Social Services*, 891 F.2d 1087 (3d Cir.1989); *Wade v. City of Pittsburgh*, 765 F.2d 405 (3d Cir.1985). Second, while there is no rule against considering a qualified immunity defense on a motion to dismiss, the defense is better considered in this case after some discovery has been conducted. *See Schrob v. Catterson*, 948 F.2d 1402, 1421 (3d Cir.1991). The defendants rely on advice of counsel to justify their actions, but that assertion is not in the complaint, and cannot be considered in the current posture of the case.

The defendants next argue that the punitive-damages claim should be dismissed. A jury can award punitive damages in a section 1983 action when the defendants acted from " 'evil motive or intent ... or ... reckless or callous indifference to the federally protected rights of others.' " *Feldman v. Philadelphia Housing Authority*, 43 F.3d 823, 833 (3d Cir.1994) (quoting *Smith v. Wade*, 461 U.S. 30, 56, 103 S.Ct. 1625, 1640, 75 L.Ed.2d 632, 651 (1983)). In the instant case, the plaintiffs allege that the defendants acted "maliciously," (amended complaint, ¶ 44), because Stish "exercised his first amendment rights of freedom of speech and association and switched his party affiliation from Democrat to Republican." (*Id.*). In light of these allegations, we will allow the punitive-damages claim to proceed at this time. *See* Fed.R.Civ.P. 9(b) ("Malice, intent, knowledge ... may be averred generally.").

We will issue an appropriate order.